UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JASON BROUSSARD | CIVIL ACTION |
| VERSUS | |
| EXXON MOBIL CORPORATION | NO. 22-00843-BAJ-RLB |

## RULING AND ORDER

Plaintiff Jason Broussard, former employee of Defendant Exxon Mobil Corporation who resigned in early 2022, sued Exxon for its allegedly improper calculation of his pension benefit and for its alleged failure to pay a shift differential between 2015 and 2020. Plaintiff's additional claim, for failure to timely pay vacation pay, was dismissed with prejudice pursuant to the parties' joint motion to dismiss. (*See* Doc. 26). Now before the Court is Defendant's **Motion for Partial Summary Judgment (Doc. 20, the "Motion")** on the pension and shift differential claims. The Motion is opposed. (Doc. 23). For the reasons that follow, the Motion will be granted.

I.  BACKGROUND

a.  Summary Judgment Evidence

The following facts are drawn from Defendant's Statement of Material Facts (Doc. 20-2, *hereinafter* "Defendant's SOF"), Plaintiff's Statement of Disputed Facts (Doc. 23-2, *hereinafter* "Plaintiff's Response SOF"), Defendant's Reply Statement of Material Facts (Doc. 24-1, *hereinafter* "Reply SOF"), the parties' Joint Proposed Pretrial Order (Doc. 27) and the record evidence submitted in support of these pleadings.

Plaintiff was employed by Defendant in Baton Rouge, Louisiana, to "provid[e] security services to both a refinery and chemical plant." (Defendant's SOF ¶ 2). Plaintiff was promoted to the position of Security First Line Supervisor in September 2015. (*Id.* ¶ 1). In February 2022, Plaintiff transferred to a Leak Detection and Repair Specialist position. (*Id.* ¶ 3). At the Baton Rouge plants, First Line Supervisors working in Operations were paid shift differential pay of $150 per month because their schedules shifted frequently between night and day shifts. (*Id.* ¶ 7). First Line Supervisors in Security, on the other hand, were not paid shift differential pay. (*Id.* ¶ 8). Plaintiff testified that he was "well aware that there was a difference between the way that they treated us [Security] and others [Operations], and [Operations] got benefits that we did not have." (*Id.* ¶ 9 (citing deposition testimony)). Plaintiff's employment contract with Defendant did not provide for shift differential pay. (*Id.* ¶ 5).

In October 2021, Defendant began paying First Line Supervisors in Security, like Plaintiff, a shift differential pay of $150 per month, with retroactive payments made to January 1, 2021. (*Id.* ¶ 13).[1]

Defendant provides employees, including Plaintiff, with a pension plan, which is subject to the federal Employee Retirement Income Security Act (ERISA), 29 U.SC. § 1001, *et seq.* (*Id.* ¶ 24).

---

[1] Plaintiff denies that he was paid a retroactive shift differential for the period of January 1 to January 15, 2021. (Plaintiff's Response SOF ¶ 13). But this is irrelevant to Plaintiff's claim in the First Amended Complaint, which is for shift differential pay for the period of "2015 until the end of 2020." (Doc. 14 ¶ 8).

2

Plaintiff resigned from Defendant's employ on February 28, 2022. (*Id.* ¶ 18).[2] Before submitting his resignation, Plaintiff used Defendant's online pension calculator to see the amount he would receive upon separation. (Plaintiff's SOF ¶ 1).[3] The calculator represented that Plaintiff's pension payout would be $346,185.15. (*Id.* ¶ 2). In the Qualified Lump Sum Distribution Election Form that Plaintiff used to choose the lump sum payout option, the amount of the 100% lump sum option was listed as $346,271.40. (Doc. 23-6 at 12). That letter explicitly warned, however, that:

> [The] lump sum payment will vary as the three segment interest rates change. An increase in the interest rates will reduce your lump sum benefit; a decrease in the interest rates will result in a larger lump sum payment. Your final lump sum amount will be based on the interest rates in effect at the time you commence your benefit.

(*Id.* (emphasis removed)).

After Plaintiff resigned in February 2022, his pension payout was only $285,822.67. (Doc. 23-7 at 2). After discovering this, Plaintiff sent a letter in May to the ExxonMobil Benefit Service Center (EMBSC), which administered the pension in question, explaining the background to his resignation, the lump sum amount he expected to receive, a request for "the policy . . . that describes the calculation of commencement date for vested employees," and a "written explanation as to why" the

---

[2] The parties dispute the date of Plaintiff's last day of employment, (*see* Defendant's SOF ¶ 18), but for purposes of the Court's decision on the Motion, which finds that Plaintiff's pension claim is preempted by federal law, the exact date is irrelevant.

[3] Plaintiff attaches a screenshot of what he describes as the pension calculation he received. (Doc. 23-3). Defendant strenuously objects to this photo, arguing that it is unauthenticated, inadmissible, and illegible. "At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017). What's more, the Court can read the text on the image perfectly well.

3

information was not provided prior to his separation. (Doc. 20-4 at 36). Plaintiff characterizes this letter as a "written claim," (Plaintiff's SOF ¶ 13), but EMBSC did not treat the letter as such. Instead, EMBSC responded, in October, with a letter providing a "Benefit Calculation Statement" along with an explanation of how Plaintiff could file a claim. (Doc. 20-4 at 39). Prior to receiving the letter from EMBSC, Plaintiff, through counsel, filed this lawsuit in state court. (Doc. 1-1).

The Summary Plan Description (SPD) of the pension in question sets forth the "claims procedures" for filing a claim and subsequent appeal. (Defendant's SOF ¶ 25). After receiving a claim, EMBSC will review the claim and respond. (*Id.* ¶ 27). If the claim is denied, the plan participant will receive a written notice of the decision, describing "the specific reasons for the denial and the provisions upon which they are based," and the "process for requesting an appeal." (*Id.* ¶ 28). Under the SPD, if a claim is denied in whole or in part, an "appeal is required in order for [a participant] to preserve [the participant's] right to bring a civil action in court. (*Id.* ¶ 29). Plaintiff did not file an appeal. (Reply SOF ¶ 14).

### b. Procedural History

Plaintiff filed this lawsuit in September 2022 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana. (Doc. 1). In October, Defendant removed the case to this Court, asserting this Court's federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*Id.* at 2). Defendant also asserted this Court's federal subject matter jurisdiction under 28 U.S.C. § 1331, alleging that Plaintiff's claim for additional pension benefits is subject to the federal Employee

4

Retirement Income Security Act (ERISA), 29 U.SC. § 1001, *et seq.*, and is preempted by federal law. (*Id.* at 3). In November 2023, Plaintiff filed a First Amended Complaint. (Doc. 14).

Plaintiff seeks the following pursuant to the Louisiana Wage Payment Act, La. R.S. § 23:631, *et seq.*: (1) statutory penalties and attorney's fees for Defendant's alleged failure to timely pay Plaintiff's vacation pay; (2) wages, statutory penalties, and attorney's fees for Defendant's alleged improper calculation of Plaintiff's pension benefit; and (3) wages, statutory penalties, and attorney's fees for Defendant's alleged failure to pay a shift differential between 2015 and 2020. (*See id.*).

As explained above, Plaintiff's vacation pay claim was dismissed at the joint request of the parties. (Doc. 26). Defendant's Motion seeks summary judgment on Plaintiff's remaining claims.

## II. LAW AND ANALYSIS

### a. Standard

Federal Rule of Civil Procedure 56(a) provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant bears its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587. Stated differently, "[i]f

the party with the burden of proof cannot produce any summary judgment evidence on an essential element of [their] claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

### b. Discussion

Defendant seeks summary judgment on Plaintiff's claim for pension benefits because the claim is preempted by ERISA, and, in the alternative, because Plaintiff failed to exhaust his administrative plan remedies for his pension claim. (*See* Doc. 20-1 at 1). Defendant seeks summary judgment on Plaintiff's claim for the shift differential payment because there is no evidence that Plaintiff was entitled to such additional pay during the period alleged, and, in the alternative, because Plaintiff's claim should be limited by Louisiana's three-year prescription period. The Court will address each argument in turn.

### i. Plaintiff's Pension Claim is Preempted by ERISA

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *MedARC, LLC v. Scott & White Health Plan*, No. 3:20-CV-3241, 2022 WL 3044569, at *10 (N.D. Tex. Aug. 1, 2022) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). To this end, ERISA Section 502(a)(1)(B) provides a civil enforcement provision for plan participants. It states that a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *Aetna Health, Inc. v. Davila*, 524 U.S. 200, 209 (2004). However, this civil enforcement remedy is designed to be

"the exclusive vehicle for actions by ERISA-plan participants." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987).

To achieve this, Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.'" *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001). So, as the Supreme Court stated in *Davila,* "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive, and is therefore preempted." 524 U.S. at 209.

Here, it is undisputed that Plaintiff's pension plan is governed by ERISA. (*Id.* ¶ 24). Despite this, Plaintiff has not challenged his pension payment under ERISA, but rather has sued under the Louisiana Wage Payment Act, a state law. Plaintiff's First Amended Complaint does not mention ERISA. Instead, he asserts only a state law claim and argues that his "claim sounds in breach of a perfected agreement to pay wages due." (Doc. 23 at 15).

Under U.S. Court of Appeals for the Fifth Circuit precedent, "to determine whether a state law relates to a plan for purposes of ERISA preemption, the court asks '(1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'"

7

*McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 417 (5th Cir. 2008) (quoting *Woods v. Tex. Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006)).

Here, Plaintiff's state law claim addresses an area of federal concern as it is based solely on an allegedly improper pension distribution under Defendant's pension plan. *See Davila,* 524 U.S. at 211 (finding that plaintiffs' claims 'related to' a benefit plan where the only connection between the plaintiffs' and the third-party administrator, CIGNA, was CIGNA's alleged mishandling of an ERISA-regulated benefit plan). Likewise, Plaintiff's claim "directly affect[s] the relationship among the traditional ERISA entities because it is "dependent on, and derived from the rights of the plan beneficiaries"—in this case Plaintiff—"to recover benefits under the terms of the [ERISA] plan." *Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Texas, Inc.*, 164 F.3d 952, 954–55 (5th Cir. 1999) (finding preemption of plaintiff's claim of misrepresentation of coverage because ERISA "preempts all state laws insofar as they relate to any employee benefit plan covered by the Act" (quotations omitted)).

Plaintiff attempts to argue that instead of arising under ERISA, his claim arises in contract, because communications from Defendant regarding his pension payout suggested that he would receive more than he eventually did, and he argues that his response to those communications constituted an acceptance of Defendant's pension payout "offer." (*See* Doc. 23 at 12). But this argument is beside the point. Plaintiff's claim here arises entirely from his status as a beneficiary under Defendant's pension plan. Moreover, Courts in this circuit consistently hold that "breach of contract claims based on [an] alleged failure to pay the full amount of

8

benefits due under the terms of the [ERISA] policy are preempted." *Transitional Hosps. Corp.*, 164 F.3d at 955; *see Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290–91 (5th Cir. 1988) (affirming district court's dismissal on ERISA preemption grounds of hospital's state law breach of contract claims arising out of assignment of patient's rights under health care policy); *St. Luke's Episcopal Hosp. v. Louisiana Health Serv. & Indem. Co.*, No. CIV.A. H-08-1870, 2009 WL 47125, at *12 (S.D. Tex. Jan. 6, 2009) ("Because St. Luke's breach of contract theory is now premised on its contractual rights under the health insurance policy as an assignee, ERISA preempts the state-law breach of contract claim."). Regardless of the label it bears, Plaintiff's claim is essentially a claim that he was wrongfully denied coverage under an ERISA benefit plan.

Plaintiff likewise finds no support in the case law. In the sole decision Plaintiff cites on this issue, *Aucoin v. Regions Fin. Corp.*, No. CIV.A. 09-3835, 2014 WL 2527046 (E.D. La. June 4, 2014), the court at summary judgment actually explained that it had previously "found that all of [the plaintiff's] state law claims against [defendants], except his claim for fraud, were preempted by ERISA," and dismissed those claims. *Id.* at *2. In other words, in the very case Plaintiff cites in support of his argument, the court did exactly the opposite of what he seeks here.

Because no genuine dispute of material fact exists as to whether Plaintiff's claim is preempted by ERISA, Defendant it is entitled to summary judgment as a matter of law on this claim.

9

### ii. Plaintiff Failed to Exhaust His Available Administrative Remedies

Even if Plaintiff's claim were not preempted by ERISA, Plaintiff has failed to exhaust his available administrative remedies prior to filing suit. ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). Under 29 U.S.C. § 1133(2), every ERISA plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." Before a claimant may sue to receive benefits from an ERISA plan, the claimant "must first exhaust available administrative remedies under the plan." *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). Because the exhaustion requirement is an affirmative defense, the defendant has the burden of proof. *Mission Toxicology, LLC v. UnitedHealthcare Ins.*, 499 F. Supp. 3d 338, 347 (W.D. Tex. 2020). After the defendant carries its burden, the plaintiff has the burden to show an applicable exception. *Id.*

Defendant here argues that Plaintiff failed to exhaust the available administrative remedies before filing this suit. (Doc. 20-1 at 11–12). Plaintiff argues that the letter he sent in May 2022 requesting an explanation of the benefits calculation was a claim. (Plaintiff's SOF ¶ 13). Defendant disputes this, arguing that the letter was only a request for information and was never treated as a claim. (Reply SOF ¶ 14).

The Court finds that Plaintiff failed to exhaust the available administrative remedies. First, Plaintiff's letter is framed as a request for information, not a claim. (*See* Doc. 20-4 at 36). Second, even if Plaintiff's letter was a claim, Plaintiff filed this lawsuit in state court prior to receiving any denial of the claim or filing any appeal of a denial of the claim.

A plaintiff is exempt from ERISA's exhaustion requirement "when such attempts would be futile." *Bourgeois*, 215 F.3d at 479. "A failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility." Plaintiff makes no argument or showing whatsoever that attempting to satisfy the exhaustion requirements here would have been futile.

For these reasons, even if Plaintiff's claim were not preempted by ERISA, he has failed to satisfy the available administrative remedies, and summary judgment will be granted to Defendant. *See, e.g., Brushy Creek Fam. Hosp., LLC v. Blue Cross Blue Shield of Texas, a Div. of Health Care Serv. Corp.*, No. 1:22-CV-00464, 2024 WL 2789389, at *3 (W.D. Tex. May 30, 2024), *report and recommendation adopted sub nom. Brushy Creek Fam. Hosp., LLC v. Blue Cross & Blue Shield of Texas, a Divison of Health Care Serv. Corp.*, No. A-22-CV-00464, 2024 WL 3074393 (W.D. Tex. June 20, 2024) (granting summary judgment on ERISA claim for failure to exhaust available administrative remedies); *Martinez v. Prudential Ins. Co. of Am.*, 615 F. Supp. 3d 519, 534 (S.D. Tex. 2022), *appeal dismissed*, No. 22-40538, 2022 WL 18776211 (5th Cir. Nov. 15, 2022) (same).

### iii. Plaintiff's Shift Differential Claim Fails

Plaintiff's final remaining claim is under the Louisiana Wage Payment Act (LWPA) for retroactive payment of the $150 per month shift differential that he began to receive in 2021.

The LWPA "is designed to compel prompt payment of earned wages upon an employee's discharge or resignation." *Davis v. St. Francisville Country Manor, L.L.C.*, 2013-0190 (La. App. 1 Cir. 11/1/13), 136 So. 3d 20, 22. It requires an employer, upon termination or resignation of an employee, to "pay the amount due under the terms of employment." La. R.S. 23:631(A). "The LWPA requires that Plaintiffs prove they were owed wages under a 'term of employment.'" *Bennett v. McDermott Int'l, Inc.*, 855 F. App'x 932, 939 (5th Cir. 2021).

Defendant argues that Plaintiff "had no employment contract" or "employment policy or agreement . . . for the [shift differential] payment prior to January 1, 2021," and therefore his LWPA claim for such payments between 2015 and 2020 fails. (Doc. 20-1 at 13–14). Plaintiff fails to respond in substance to this argument. (Doc. 23 at 22–24). Instead, Plaintiff's brief assumes his eligibility for shift differential pay prior to 2021 but does not attempt to explain the basis for this assumption.

From what the Court can glean from Plaintiff's briefing, which generally only contests whether his claim is prescribed, Plaintiff's argument is that because Defendant began paying him the shift differential in 2021, they should have been paying it to him all along. (*See* Doc. 23 at 23 ("[Plaintiff's] eligibility for shift differential compensation was not revealed to him until October 2021.")). But a

successful LWPA claim requires more. *See Bennett*, 855 F. App'x at 939 ("The LWPA requires that Plaintiffs prove they were owed wages under a 'term of employment.'").

It is undisputed that Plaintiff's employment contract with Defendant did not provide for shift differential pay. (Defendant's SOF ¶ 5). The mere fact that Defendant began to pay Plaintiff shift differential pay in 2021 does not, alone, establish that Plaintiff was owed such pay earlier. This is because the LWPA "is directed only at payment, upon termination, of 'agreed-upon' compensation." *Kerek v. Crawford Elec. Supply Co., Inc.*, No. CV 18-76-RLB, 2020 WL 4906050, at *5 (M.D. La. Aug. 20, 2020), *aff'd*, 833 F. App'x 593 (5th Cir. 2021) (emphasis added). Plaintiff has put forward no evidence that he had an agreement with Defendant under which Defendant would provide shift differential pay prior to 2021. For this reason, his claim fails, and summary judgment will be granted to Defendant on this claim.[4]

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Exxon Mobile Corporation's **Motion for Partial Summary Judgment (Doc. 20)** be and is hereby **GRANTED**. Plaintiff's claims against Defendant will be dismissed.

---

[4] Because the Court finds that Plaintiff has no claim under the LWPA, the Court need not address the parties' arguments regarding whether Plaintiff's claim has prescribed.

13

Judgment shall enter accordingly.

Baton Rouge, Louisiana, this 13th day of September, 2024

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**